IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SABIN C. BASS,
and MICHELE M. BASS,

     Plaintiffs,               CASE NO.: _____

vs.

ALAN C. ANDERSON,

     Defendant.

_____/

## **PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

COME NOW Plaintiffs, Sabin C. Bass and Michele M. Bass, by and through their undersigned counsel, hereby sue Defendant, Alan C. Anderson, and allege as follows:

### **JURISDICTION AND VENUE ALLEGATIONS**

1. This is an action for damages arising from the sale of residential property in Franklin County, Florida.

2. Jurisdiction is founded on diversity and the amount at issue in this case.

3. There is complete diversity of citizenship between Plaintiffs and Defendant. Every issue of law and fact in this action is wholly between citizens of different states.

4. Each separate count for damages described in the following paragraphs exceeds the sum of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, as specified by 28 U.S.C. § 1332(a).

5. Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b)(2). The property at issue is located on St. George Island in Franklin County, Florida, and each cause of action identified in each separate count below occurred and/or accrued in Franklin County, Florida.

6. Plaintiffs are presently uncertain as to the full extent of the undisclosed and defective conditions at their property.

7. All conditions precedent to the filing of this suit have been satisfied.

8. Plaintiffs demand a jury trial on all issues so triable as a matter of right.

**PARTIES**

9. Plaintiffs, Sabin Bass and Michele Bass, are the current owners and buyers of residential property located at 700 Bayshore Drive, St. George Island, Florida 32328 (the "Property").

10. Plaintiffs are residents of Florida who reside at 7486 Creekridge Circle, Tallahassee, Florida 32309.

11. Defendant, Alan Anderson, is the former owner and seller of the Property, who, upon information and belief, is a Georgia resident who resides at 2425 Bankstone Drive, Marietta, Georgia 30064.

12.     Defendant holds himself out as a contractor and has a crew of workers who perform construction on residential homes.

13.     Plaintiff is currently unaware of additional persons or entities, such as Defendant's business or subcontractors, who played a part in the defective repairs and fraud at issue in this suit, and accordingly reserve the right to seek leave to amend this Complaint as additional information becomes available through discovery.

### FACTUAL ALLEGATIONS

14.     Plaintiffs and Defendant entered into an "As Is" Residential Contract for Sale and Purchase of the Property on July 26, 2020 ("Contract"), attached hereto as Exhibit "A."

15.     Under the Contract, Defendant affirmed that he knew of no facts materially affecting the value of the real property which were not readily observable and which had not been disclosed to the Plaintiffs. (Ex. A ¶ 10(j).)

16.     Throughout the sale of the Property, Plaintiffs and Defendant communicated through Janalyn Dowden, who acted as seller's agent for the Defendant during the time period relevant to this suit.

17.     Defendant completed a Seller's Property Disclosure form ("Disclosure"), indicating the condition of the Property prior to the sale, attached hereto as Exhibit "B."

18. According to the Disclosure, Defendant stated that there were no termites or other wood-destroying organisms or pests on the Property, nor had the Property been structurally damaged as a result of them. (Ex. B ¶ 2(a).) Defendant confirmed that the Property had not been treated for termites or other pests. (*Id.* at ¶ 2(b).)

19. Defendant also stated there were no issues with water intrusion or drainage problems at the Property. (*Id.* at ¶ 3.) According to the Disclosure, there: (a) was no water intrusion at the Property, either past or present; and (b) were no drainage issues at the Property. (*Id.*)

20. Defendant represented that "the information provided on [the Disclosure] and any attachments is accurate and complete to the best of [Defendant's] knowledge on the date signed by [Defendant]." (*Id.* at 4.)

21. The written statements made by the Defendant in the Contract and the Disclosure were false. Defendant was aware of damage at the Property before any of those documents were created. For instance, upon information and belief, Keith Fisher of Fisher Stucco, Inc., prepared a report/proposal for Defendant shortly after he originally purchased the Property, which recommended stucco repairs and identified wood rot at the Property.

22.     On August 3, 2020, Mike Chapman of Chapman Home Inspection performed an inspection of the Property and supplied Plaintiffs with a Home Inspection Report ("Report"), attached hereto as Exhibit "C."

23.     The Report listed the stucco siding and water intrusion at the Property as items of "major concern." (Ex. C at 3.)

24.     On the exterior, Mr. Chapman identified numerous areas of damage to the siding and potential or suspected water entry points. (Ex. C at 3, 12-15.)

25.     On the interior, Mr. Chapman found several instances of water damage and water intrusion. (Ex. C at 3, 30-31.)

26.     Following receipt of the Report, Plaintiffs and Defendant entered into a Release and Cancellation of Contract on August 10, 2020, attached hereto as Exhibit "D."

27.     However, the parties subsequently entered into an addendum to the Contract, which superseded the cancellation. Addendum Number 2 also added additional terms to the Contract, wherein Defendant was required to repair various issues at the Property. Addendum Number 2 is attached hereto as Exhibit "E."

28.     According to Addendum Number 2, for all areas of concern in the Report, "[t]otal stucco on exterior of house/any area will be removed/all materials in existing wall that have moisture or have been wet and damaged will be removed

to framing. New plywood-felt-with [sic] new base coat and finished coat [will be] applied and painted." (Ex. E ¶ 1.)

29.     Paragraph one (1) of Addendum Number 2 also notes that "[a]ny framing found damaged will be replaced." (*Id.*)

30.     In the master bedroom, Defendant agreed that the walls would be opened and checked for damage and "any damaged areas found will be removed to see any or all moisture damage and, once moisture intrusion successfully remediated, replaced with new sheet rock and finished out." (*Id.* at ¶ 2.) Addendum Number 2 continues, "[i]f moisture exists work will be stopped and fixed before covering up." (*Id.*)

31.     Defendant additionally agreed that "[a]ny problems found inside the house from water will be resolved before covering up, in same manner as described for Master Bedroom." (*Id.* ¶ 3.)

32.     On or about August 17, 2020, Defendant reported that he found termite damage at the Property. *See* email correspondence, attached as Exhibit "F."

33.     Plaintiffs and Defendant executed another addendum, Addendum Number 3, on August 20, 2020, attached hereto as Exhibit "G."

34.     Under Addendum Number 3, Defendant agreed to "replace and repair all termite damage and also have a clear WDO and Termite Bond before closing." (Ex. G.)

35.     Addendum Number 3 also broadly stated that "[a]ny Stucco damage will be totally removed and repaired." (*Id.* at ¶ 2.[1])

36.     Defendant, holding himself out as a contractor, performed the supposed repair work at the Property himself along with his own crew of workers.

37.     Defendant falsely represented to Plaintiffs, through his seller's agent, Janalyn Dowden, that: (1) the stucco had been repaired in all areas where damage was found at the Property; (2) all termite-damaged wood had been removed and replaced; and (3) the moisture repairs had been completed in in the master bedroom. The email containing this representation is attached hereto as Exhibit "H."

38.     Plaintiffs and Defendant entered into an undated, additional Addendum to Contract for Residential Sale and Purchase, which stated that "Addendum 3 has been satisfied, Buyer and Seller are proceeding to closing." The undated addendum is attached hereto as Exhibit "I."

39.     The closing for the Property occurred on or about September 4, 2020.

40.     Following the closing, the Property immediately experienced significant and substantial leaking and water intrusion, including through the master bedroom ceiling.

---

[1] The numbering of the paragraphs in Addendum Number 3 omits number two and repeats number three (i.e., 1, 3, 3).

41.     Attempts to mitigate the damage revealed unrepaired water damage behind numerous walls throughout the Property and specifically in areas that were supposedly repaired by the Defendant and/or his crew.

42.     Subsequent work at the Property revealed that Defendant did not repair areas damaged by moisture, water intrusion, and/or termites, instead he literally covered up the damaged areas to appear as though repairs had been made. Photos of damaged and unrepaired areas are attached as Exhibit "J."

43.     Defendant and his crew additionally failed to adhere to standard procedures during the application of stucco at the Property, such as protecting other surfaces, resulting in damage to other portions of the Property, such as the roof. (*See* Ex. J at 5.)

44.     Termite and water damage is apparent throughout the Property, and specifically in areas that were identified and represented as being repaired by the Defendant. In numerous instances, Defendant and/or his crew placed new wood or stucco directly over damaged wood and structure to cover up the affected areas without repairing them. (*See id.* at 1-4.)

45.     Defendant was aware of damage at the Property, as evidenced by his conduct, but chose not to disclose or repair the damaged areas.

46.     Defendant chose to actively conceal the known damage, as well as damage that he discovered while working on the Property pursuant to the Addendums, and fraudulently represent that the damaged areas had been repaired.

47.     Former counsel for the Plaintiffs sent a letter on or about October 20, 2020, alerting Defendant to his failure to disclose material facts and properly repair damage at the Property pursuant to Florida law, the Contract, and its Addendums. The letter is attached hereto as Exhibit "K."

48.     Counsel followed up that letter with a supplemental notice sent to Mr. Anderson on or about October 23, 2020, attached hereto as Exhibit "L."

49.     The notice was sent pursuant to Chapter 558, Florida Statutes, and identified defects at the Property, including defective and delaminated stucco, water damaged framing, sheathing, and drywall. (Ex. L at 1.)

50.     Having received no response from Defendant to any correspondence, Plaintiffs have been forced to pursue litigation.

51.     In the event of such litigation, the Contract provides: "the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorneys' fees, incurred in conducting the litigation." (Ex. A ¶ 17.)

52.     Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

53.     On or about July 26, 2020, Defendant entered into the valid, written Contract with Plaintiffs for the sale of the Property. (Ex. A.)

54.     Defendant and Plaintiffs also executed Addendum Numbers 2 and 3 on August 12, 2020, and August 20, 2020, respectively. (Ex. E, G.)

55.     Defendant submitted the Disclosure, which was intended to disclose to Plaintiffs all known issues at the Property. (Ex. B.)

56.     At the time of the sale, Defendant represented that he knew of no facts materially affecting the value of the Property that were not readily apparent or were not disclosed. (Ex. A ¶ 10(j).)

57.     In the Disclosure, Defendant represented that there had never been any water intrusion affecting the Property or drainage problems (Ex. B ¶ 2.); there had never been termites or other pests at the Property and no structural damage resulting from such pests (*Id.* at ¶ 3.); and the information provided in the Disclosure was both accurate and complete. (*Id.* at 4.)

58.     The written statements made by the Defendant to Plaintiffs in the Contract and the Disclosure were false.

59.     Defendant had prior knowledge of the water intrusion and moisture damage, stucco damage, and termite damage at the Property, which he failed to disclose as required by Florida law.

60.     As a contractor, who had previously worked on the Property, Defendant was intimately aware of damage to the home, which he failed to disclose to Plaintiffs, a party who had no way of knowing about the hidden moisture and termite damage at the home.

61.     Following inspection of the Property, and the Report submitted by Mike Chapman, Defendant agreed to make necessary repairs to correct the moisture, stucco, and termite damage that the Report addressed as well as any other areas where such damage was found. (Ex. E, G.)

62.     In the process of these repairs, Defendant encountered numerous areas of moisture, stucco, and termite damage that were not previously discovered.

63.     Rather than disclosing this information to Plaintiffs, or repair the newly found damage, Defendant instead physically concealed the damaged areas and actively withheld this information from Plaintiffs.

64.     Defendant materially breached the Contract and Addendums to the Contract with the Plaintiffs by failing to disclose known facts that materially affected the value of the Property, pursuant to paragraph 10(j) of the Contract; failing to

perform contractually required repairs prior to closing; and by falsely representing to Plaintiffs through his agent that those repairs had been completed.

65.     Plaintiffs have been damaged by Defendant's breach, including, but not limited to, the costs associated with repairing water, moisture damage; costs of repairing termite wood and structural damage; costs of repairing and replacing stucco; and temporary loss of use of portions of the Property.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for compensatory damages, prejudgment interest, attorneys' fees and costs pursuant to paragraph 17 of the Contract, and any other relief this Court may deem proper and just.

<u>**COUNT II – FAILURE TO DISCLOSE**</u>

66.     Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

67.     Plaintiffs entered into the valid, written Contract with the Defendant in July 2020 for the sale and purchase of the Property. (Ex. A.)

68.     At the time of the sale, Defendant represented that he knew of no facts materially affecting the value of the Property that were not readily apparent or were not disclosed. (*Id.* at ¶ 10(j).)

69.     In the Disclosure, Defendant represented: there had never been any water intrusion affecting the Property or drainage problems (Ex. B ¶ 2); there had

never been termites or other pests at the Property and no structural damage resulting from such pests (*Id.* at ¶ 3); and the information provided in the Disclosure was both accurate and complete. (*Id.* at 4.)

70. The written statements made by the Defendant to Plaintiffs in the Contract and the Disclosure were false.

71. Defendant had prior knowledge of the water intrusion and damage, stucco damage, and termite damage at the Property, which he failed to disclose as required by Florida law.

72. As a contractor, who had previously worked on the Property, Defendant was intimately aware of damage to the home, which he failed to disclose to Plaintiffs, a party who had no way of knowing the non-obvious water and termite damage at the home.

73. Following inspection of the Property, and the Report submitted by Mike Chapman, Defendant agreed to make necessary repairs to correct the moisture, stucco, and termite damage that the Report addressed as well as any other areas where such damage was found. (Ex. E, G.)

74. In the process of these repairs, Defendant encountered numerous areas of moisture, stucco, and termite damage that were not previously discovered.

75.     Rather than disclosing this information to Plaintiffs, or repair the newly found damage, Defendant instead physically concealed the damaged areas and actively withheld this information from Plaintiffs.

76.     Defendant intended Plaintiffs rely on the non-disclosure, and Plaintiffs did in fact rely on the non-disclosure in their decision to purchase the Property.

77.     Plaintiffs have been damaged by Defendant's failure to disclose known facts that materially affected the value of the Property, including, but not limited to, the costs associated with repairing water, moisture damage; costs of repairing termite wood and structural damage; costs of repairing and replacing stucco; and temporary loss of use of portions of the Property.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for compensatory damages, prejudgment interest, attorneys' fees and costs pursuant to paragraph 17 of the Contract, and any other relief this Court may deem proper and just.

### COUNT III – FRAUD

78.     Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

79.     On August 26, 2020, Defendant, through Janalyn Dowden, his (seller's) agent in the sale, falsely represented to Plaintiffs that: (1) the stucco had been repaired in all areas where damage was found at the Property; (2) all termite-

damaged wood had been removed and replaced; and (3) the moisture repairs had been completed in in the master bedroom. (Ex. H.)

80. Defendant furthermore falsely represented to Plaintiffs that he had performed all repairs and replacements necessary for all termite damage, pursuant to Addendum Number 3. (*See* Ex. G ("Seller agrees to replace and repair all termite damage and also have a clear WDO and Termite Bond before closing."); *see also* Ex. I ("Addendum 3 has been satisfied, Buyer and Seller are proceeding to closing.").)

81. Defendant knew at the time of making the aforementioned statements that they were false. Defendant personally oversaw work at the Property and/or personally performed supposed repairs at the Property, where damage due to water intrusion and termites was obvious. Rather than repair, replace, or disclose the damage, Defendant instead covered up said damage to give the appearance that it had been repaired. Defendant then represented to Plaintiffs that the repairs had been made, with full knowledge of the pervasive moisture and termite damage that was left untouched.

82. Defendant made these representations with the purpose of inducing Plaintiffs into closing the Property and completing purchase of the home, from which Defendant financially benefitted.

83.    Defendant, being a contractor and having worked on the Property in the past, was in a position of power with respect to his intimate knowledge of the condition of the Property beneath the faux repairs.

84.     Plaintiffs justifiably relied on the Defendant's representations, made through his agent, that the moisture, stucco, and termite damage had been repaired and that any affected components had been replaced when they decided to close on the Property.

85.    As a direct and proximate result of Plaintiffs' justifiable reliance on Defendant's representations, Plaintiffs have suffered damages, including but not limited to, the costs associated with repairing water, moisture damage; costs of repairing termite wood and structural damage; and costs of repairing and replacing stucco; and temporary loss of use of portions of the Property.

86.    Plaintiffs intend to seek leave from the Court to amend this Complaint to include punitive damages pursuant to Florida statute.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for compensatory damages, prejudgment interest, attorneys' fees and costs pursuant to statute and paragraph 17 of the Contract, and any other relief this Court may deem proper and just.

## COUNT IV – FRAUDULENT MISREPRESENTATION

87.    Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

88.    On August 26, 2020, Defendant, through Janalyn Dowden, his (seller's) agent in the sale, falsely represented to Plaintiffs that: (1) the stucco had been repaired in all areas where damage was found at the Property; (2) all termite-damaged wood had been removed and replaced; and (3) the moisture repairs had been completed in in the master bedroom. (Ex. H.)

89.    Defendant furthermore falsely represented to Plaintiffs that he had performed all repairs and replacements necessary for all termite damage, pursuant to Addendum Number 3. (*See* Ex. G ("Seller agrees to replace and repair all termite damage and also have a clear WDO and Termite Bond before closing."); Ex. I ("Addendum 3 has been satisfied, Buyer and Seller are proceeding to closing.").)

90.    Defendant knew at the time of making the aforementioned statements that they were false. Defendant personally oversaw work at the Property and/or personally performed repairs at the Property, where damage due to water intrusion and termites would have been obvious. Rather than repair, replace, or disclose the damage, Defendant instead covered up said damage to give the appearance that it had been repaired. Defendant then represented to Plaintiffs that the repairs had been

made, with full knowledge of the pervasive moisture and termite damage that was left untouched.

91. Defendant made these representations with the purpose of inducing Plaintiffs into closing the Property and completing purchase of the home, from which Defendant financially benefitted.

92. Plaintiffs relied on the Defendant's representations that the moisture and termite damage had been repaired and that damaged areas had been replaced when they decided to close on the Property.

93. As a direct and proximate result of Plaintiffs' reliance on Defendant's representations, Plaintiffs have suffered damages, including but not limited to, the costs associated with repairing water, moisture damage; costs of repairing termite wood and structural damage; and costs of repairing and replacing stucco; and temporary loss of use of portions of the Property.

94. Plaintiffs intend to seek leave from the Court to amend this Complaint to include punitive damages pursuant to Florida statute.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for all damages in any way related to Defendant's fraudulent misrepresentation and inducement and any other relief this Court may deem proper and just.

<u>**COUNT V – FRAUD IN THE INDUCEMENT**</u>

95.     Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

96.     Plaintiffs and Defendant entered into the Contract on July 26, 2020. (Ex. A.)

97.     Following the Report provided by Mike Chapman (Ex. C), the Contract was cancelled through the Release and Cancellation of Contract dated August 10, 2020. (Ex. D.)

98.     At that point in time, there was no longer any agreement to purchase the Property. (*Id.*)

99.     Defendant induced Plaintiffs into reinstating the agreement to purchase the Property through Addendum Number 2 and Addendum Number 3, under which Mr. Allen agreed to perform numerous repairs to the Property. (*See* Ex. E, G.)

100.    Defendant had no intention of actually performing the repairs listed in Addendum Number 2 and Addendum Number 3.

101.    Instead of repairing the damage as he had agreed, Defendant covered up the damage to appear as if the repairs had actually been made. (*See, e.g.*, Ex. J at 1-4.)

102.    On August 26, 2020, Defendant, through Janalyn Dowden, his (seller's) agent in the sale, falsely represented to Plaintiffs that: (1) the stucco had been

repaired in all areas where damage was found at the Property; (2) all termite-damaged wood had been removed and replaced; and (3) the moisture repairs had been completed in in the master bedroom. (Ex. H.)

103.    Defendant furthermore falsely represented to Plaintiffs that he had performed all repairs and replacements necessary for all termite damage, pursuant to Addendum Number 3. (*See* Ex. G ("Seller agrees to replace and repair all termite damage and also have a clear WDO and Termite Bond before closing.").)

104.    Defendants' false representations additionally induced Plaintiffs into executing the supplemental, undated addendum stating that Addendum Number 3 had been satisfied. (*See* Ex. I ("Addendum 3 has been satisfied, Buyer and Seller are proceeding to closing.").)

105.    Defendant knew at the time of making the aforementioned statements that they were false. Defendant had no intention of actually repairing damage at the Property, and did not actually repair the damage at the Property.

106.    Defendant made the promise to repair damage identified in Mr. Chapman's Report specifically to induce Plaintiffs into entering Addendum Number 2 and Addendum Number 3, which revived the canceled Contract to purchase the Property.

107.    Defendant then falsely represented that the repairs had been made pursuant to Addendum Number 2 and Addendum Number 3 to induce Plaintiffs into

executed the additional, undated addendum so that the parties would move to closing and complete the purchase of the Property.

108. Plaintiffs relied on the Defendant's representations that he would made necessary repairs to the property when they entered into Addendum Number 2, which superseded the cancellation of the Contract.

109. Plaintiffs further relied on Defendant's representations that the moisture and termite damage had been repaired and that damaged areas had been replaced when they executed the additional, undated addendum, which stated that Addendum Number 3 had been satisfied and the parties were moving to closing.

110. As a direct and proximate result of Plaintiffs' reliance on Defendant's representations, Plaintiffs have suffered damages, including but not limited to, costs associated with repairing water, moisture damage; costs of repairing termite wood and structural damage; and costs of repairing and replacing stucco; and temporary loss of use of portions of the Property.

111. Plaintiffs intend to seek leave from the Court to amend this Complaint to include punitive damages pursuant to Florida statute.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for all damages in any way related to Defendant's fraud in the inducement, including recession of the Contract, and any other relief this Court may deem proper and just.

112.   Plaintiffs reallege and reassert Paragraphs 1 through 51 as if fully set forth herein.

113.   Defendant was responsible for the replacement and repair of moisture damage, stucco damage, and termite damage at the Property. (Ex. E, G.)

114.   Defendant held himself out as a contractor, with a crew of workers, and performed and/or supervised supposed repairs and replacement of damaged areas at the Property.

115.   Defendant and/or his crew, working under Defendant's control and supervision, owed a duty to Plaintiffs to repair the moisture, stucco, and termite damage at the Property or cause to be properly repaired or replaced in accordance with their skill and expertise, acceptable standard trade practices, applicable building codes, and in a non-negligent manner.

116.   Defendant breached that duty by failing to repair or replace the damaged areas and by covering up the damaged areas to make it appear as if the areas were properly repaired, and failing to work or cause work at the Property to be performed with reasonable care and in accordance with trade practices, standards, and applicable building codes.

117.   Defendant, through his negligence at the Property, has directly and proximately caused damages, including damage to other portions of the Property,

and has resulted in loss, including loss associated with the cost of remediation and repair, such as Rip and Tear damages.

WHEREFORE, Plaintiffs, Sabin C. Bass and Michele M. Bass, hereby demand judgment against Defendant, Alan C. Anderson, for damages in any way related to the negligent performance of work performed at the Property, as well as attorneys' fees and costs under paragraph 17 of the Contract, and any other relief this Court may deem proper and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs, Sabin C. Bass and Michele M. Bass, demand, as a matter of right, a trial by jury for all issues so triable.

Dated this 8th day of January, 2021.

George W. Hatch, III • FBN 0072028
george@guildaylaw.com
GUILDAY LAW, P.A.
1983 Centre Pointe Boulevard, Suite 200
Tallahassee, Florida 32308-7823
*Secondary E-Mail addresses:*
meredith@guildaylaw.com,
meredith@guildaylaw.com
(850) 224-7091
***Attorney for the Plaintiffs***